In re Margarum. *55 N. J. L.*

IN THE MATTER OF THE PETITION OF THEODORE F. MARGARUM AND OTHERS FOR A NEW ELECTION IN THE TOWNSHIP OF WANTAGE.

1. The Supreme Court cannot express an advisory opinion except in cases falling within the operation of the two hundred and forty-seventh section of the Practice act.
2. The act regulating elections, approved May 28th, 1890, authorizes the justice of the Supreme Court, upon petition, to decide in a summary way upon the fairness and legality of certain elections, but in performing such function he is not required or authorized to sit in any court. *Held,* that such justice cannot call upon the Supreme Court for its advisory opinion touching any matter arising in the course of such proceedings.

A petition, with affidavits annexed, was presented on the 28th of March, 1892, to the justice of the Supreme Court holding the Circuit Court in the county of Sussex, representing that at an election just held in the township of Wantage, in said county, for the election of a town clerk, collector and other officers, the votes of a certain class of voters had been rejected by the board of election; thereupon the following order was made, viz. :

"A petition, with affidavits annexed, was presented on March 28th, 1892, to Hon. William J. Magie, one of the justices of the Supreme Court, holding the Circuit Court in and for the county of Sussex.

26 *Vroom.* In re Margarum.

"A copy of the petition and affidavits is hereto annexed and made a part of this certificate.

" The petition was made and presented under the supplement to the act regulating elections, which supplement was approved May 28th, 1890, and the amendment thereof approved March 23d, 1891.

" The said justice appointed Wednesday, the 6th day of April, 1892, at the court house, in Newton, in said county, as the time and place when and where he would investigate the truth of the allegations contained in said petition and in the order making said appointment; also ordered that the township officers declared elected at said election should be served with notice of said appointment, and such notice was given to said officers.

"At the time and place so appointed the petitioners and the officers declared elected at said election appeared by counsel.

" Thereupon the counsel for such officers moved to dismiss the said petition on the ground that if the allegations contained in said petition were sustained by proof the relief prayed for in said petition could not be granted, but the said petition must be dismissed pursuant to the provisions of the above mentioned acts, under which the same was made and presented.

" The said justice being of opinion that the question presented by said motion is one of doubt and difficulty, hereby certifies the same to the Supreme Court for its advisory opinion, viz.:

" Whether, if the allegations contained in said petition shall be sustained by proof, the relief prayed for in said petition can be granted, or whether in such case the petition must be dismissed?

" W. J. MAGIE, *J.*"

Argued at June Term, 1892, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and REED.

For the township of Wantage, *Charles J. Roe.*

For the petitioners, *James F. Conklin*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.    The litigation in this case relates to an election that was held recently in the township of Wantage, in the county of Sussex, and it has been referred to this court for its advisory opinion.

The legal procedure referred to was founded on the fifty-second section of the act approved May 28th, 1890, entitled "A further supplement to an act entitled 'An act to regulate elections,' approved April eighteenth, one thousand eight hundred and seventy-six." The course of law there presented is, in general effect, this, viz., that whenever, within twenty days next succeeding any election in any election district or voting precinct in any county of this state, a petition signed by a certain number of legal voters, containing allegations and statements, verified by affidavits showing certain specified frauds or irregularities at such election, shall be presented "to the justice of the Supreme Court holding the Circuit Court in and for said county, it shall be the duty of such justice, in a summary way, to investigate the truth of the statements and allegations in such petition contained, and to that end and for that purpose it shall be the duty of such justice to appoint a time and place within said county, not later than ten days thereafter, when and where he will proceed to hear and determine said matter, of which time and place so appointed the petitioners shall cause at least six days' notice to be given to all such persons as said justice shall direct; at such time and place so appointed said justice shall proceed, in a summary manner, to hear and determine said matter, unless it be adjourned for good cause shown." Then follows the further direction that if the allegations of the petition are not sustained it shall be dismissed, but that if they are sustained, " it shall be the duty of the justice to make an order setting aside or nullifying said election," &c., " and such order shall be filed in the office of the county clerk."

It will be at once perceived, from this summary of this statutory clause, that the judge who is to determine the prescribed contest is not empowered for that purpose to sit in, or under the authority of, any court. The reference to him as " the justice of the Supreme Court holding the Circuit Court in and for said county," is a mere *designatio personæ.* The expression evidently confers upon the official no authority, except such as is expressly prescribed, which is that he shall entertain the complaint in the capacity of a commissioner acting under and absolutely by the force of a statutory authorization. He is to determine the matter and make an order dismissing the petition or setting aside the election, and which order is to be filed with the clerk of the county. This is the entire scope and extent of the power expressly conferred, and it would not seem that, in such an affair, a justice of the Supreme Court has inherent in his office any ability that would materially subserve this statutory endowment. It is true that, as such justice, he is possessed of the statutory authority to take voluntary oaths and affidavits, but he could not compel the attendance of witnesses, nor could he punish their recusancy if they should refuse to be sworn. In the present inquiry it is not pertinent to consider the serious question whether this entire provision relating to this method of determining the legality of these elections, is not so imperfect and incomplete with respect to the power conferred upon the judicial officer who is to decide the controversy, as to render the provision itself wholly nugatory, all our immediate concern being to emphasize the fact that such justice in executing the function in question does not sit *in curia.*

This being the *status* of the litigation the question necessarily is presented, How can this court take cognizance of it in that form of proceeding? The justice having the case under the statute before him has sent it to us for our advisory opinion. Whence does the Supreme Court obtain jurisdiction in such an inquiry? Most plainly it cannot be claimed that it is possessed of it by virtue of the two hundred and forty-seventh section of the Practice act, for that provision relates

exclusively to cases pending in the county Circuit Courts; nor is there the faintest trace of such a power to be discovered in any of the prerogatives of the court regarded as a common law tribunal. If the present procedure can be certified to this court for its advisory opinion, so can any of the numerous procedures required by various statutes to be transacted by the respective members of this court. But such certification is not only unknown to the law, but it is, from its intrinsic nature, highly objectionable. When a case is certified from the Circuit to this court by force of the Practice act, the formal advice of this court has the force of a judgment in its conclusiveness; the circuit judge is required to enforce it and error may be assigned upon it; but if, in such instances as the present, this court should render the advice sought for, its conclusions would be devoid of all peremptory authority, for it would be entirely competent for the officer to whom they were sent to disregard them, and in despite of them to carry his own convictions into effect. It is deemed that it would not comport with the dignity of this high tribunal to pronounce decisions, in solemn form and after full consideration, that would be entitled to no force beyond that of argument or persuasion. And, in addition to this objection, there is another which, perhaps, is equally serious. By the constitution of this state a justice of this court who has expressed an opinion on any subject in litigation cannot sit in the Court of Errors when such subject is there on review. So that the consequence would be, if we comply with the present solicitation, that each member of this court participating in the transaction, would abdicate measureably that appellate power which, on considerations of the public interest, has been vested in him. The consequence is that the court must decline to render the assistance that has been requested.

It is proper to remark that, at the last term of this court, an advisory opinion was given in one of these cases by one of the justices of this court, but the question of jurisdiction was not mooted nor considered on that occasion, so that this court does not feel itself bound by such judicial action.